IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SCOTTSDALE INSURANCE COMPANY,

        Plaintiff,

    v.

ORTIZ & ASSOCIATES, INC.,
an Oregon Corporation; CPM
DEVELOPMENT CORPORATION,
a Washington Corporation,
d/b/a INLAND ASPHALT COMPANY;
STACY BOATMAN, as Personal
Representative of the Estate
of Brian Allen Lacy, deceased;
B.A.L. minor child; and STACY
BOATMAN, individually and in
her capacity as the parent
and legal guardian of B.A.L.,

        Defendants.

Case No. 3:13-cv-01791-AA

OPINION AND ORDER

---

AIKEN, Chief Judge:

    This is a declaratory judgment action to obtain a judicial
declaration as to plaintiff Scottsdale Insurance Company's
("Scottsdale") coverage obligation, if any, to defendants Ortiz &

1   - OPINION AND ORDER

Associates, Inc. ("Ortiz") and CPM Development Corp. d/b/a Inland Asphalt Co. ("Inland") arising out of an underlying lawsuit involving a fatal workplace accident ("underlying lawsuit"). Inland moves to dismiss this action for lack of subject matter jurisdiction, or alternatively, to stay this action until the underlying lawsuit pending in Washington is resolved. Inland's motion to stay this action until the underlying lawsuit is resolved is GRANTED.

## I. BACKGROUND

On August 9, 2012, defendants Stacy Boatman and minor child B.A.L. (collectively "Boatman") brought the underlying lawsuit against Inland in Washington State trial court. Boatman alleges several claims, including the wrongful death of Brian Allen Lacy, in connection with a workplace accident where Lacy was allegedly struck and killed by a dump truck owned by Inland while he worked on a highway construction project site in Kennewick, Washington. Farnell Decl. Ex. 1 at ¶¶ 2.1, 3.4, 3.6.

Defendant Inland was the contractor for the construction project with the State of Washington Department of Transportation; Ortiz was Inland's subcontractor on the job site and also Lacy's employer. Hall Decl. Ex. 1.

Under the subcontract between Inland and Ortiz, Ortiz was obligated to maintain certain minimum insurance coverage and to obtain additional insured status for Inland under its policies.

2   - OPINION AND ORDER

Hall Decl. Ex. 1 at 15-16. Ortiz's primary commercial liability policy (the "Catlin Policy") includes Inland as an additional insured. Lister Decl. Ex. 2 at 73. Additionally, Scottsdale issued a commercial excess insurance policy ("Excess Policy") to Ortiz, providing coverage in excess of injury or damage covered in the Catlin Policy, that was effective at the time of the accident. Lister Decl. Ex. 2 at 94.

The underlying lawsuit to determine liability for Lacy's death is still ongoing. Inland has not tendered defense of the underlying lawsuit to Scottsdale. Hall Decl. ¶ 3; Rosner Decl. at 6-7 (doc. 33). However, Inland has placed Scottsdale on notice that the underlying lawsuit could trigger coverage under the Excess Policy.

Inland is also engaged in a separate action related to the underlying lawsuit. Ortiz's primary insurer, Catlin, initially defended Inland in the underlying lawsuit; however, Catlin is not presently doing so and has not agreed to resume defense of Inland in the underlying lawsuit. Hall Decl. ¶ 4. As a result, Inland has commenced coverage litigation in the U.S. District Court for the Western District of Washington to enforce Catlin's coverage obligations. Hall Decl. ¶ 4. This lawsuit is also currently ongoing.

On October 8, 2013, Scottsdale initiated this declaratory judgment action seeking a declaration that it has no duty to defend, indemnify, or provide coverage under the Excess Policy with

3   - OPINION AND ORDER

respect to the underlying lawsuit. Scottsdale maintains that the auto liability exclusion in the Excess Policy precludes coverage for the accident in the underlying lawsuit. Subsequently, on January 28, 2014, Scottsdale moved for summary judgment to establish that the Excess Policy it issued to Ortiz provides no coverage for the claims and damages alleged in the underlying lawsuit against Inland.

Inland now moves to dismiss the declaratory judgment action on grounds that this Court has no subject matter jurisdiction. In the alternative, Inland moves to stay this action until the underlying litigation pending in the Washington State court and the Western District of Washington are resolved.

## II. DISCUSSION

Scottsdale alleges Inland tendered defense of the underlying lawsuit to Scottsdale, and that it has no duty to defend Inland. Compl. at ¶ 35 (doc. 1); Pls. Resp. at 2. The duty to defend is often addressed before the duty to indemnify because it can be determined by examining the complaint alone. Ledford v. Gutoski, 319 Or. 397, 400, 877 P.2d 80 (1994)("The insurer has a duty to defend if the complaint provides *any basis* for which the insurer provides coverage."). However, the duty to defend is not at issue in this motion. At this time, no evidence shows that Inland tendered defense to Scottsdale. Hall Decl. ¶ 3; Rosner Decl. at 6-7 (doc. 33).

4    - OPINION AND ORDER

Scottsdale also alleges it has no duty to indemnify Inland in the underlying lawsuit. The duty to indemnify is independent of the duty to defend. Ledford, 319 Or. at 403. The insurer's duty to indemnify arises when the insured is "liable for harm or injury that is covered by the policy." Leach v. Scottsdale Indemn. Co., 261 Or. App. 234, __ P.3d __, 2014 WL 662324, at *8 (Feb. 12, 2014)(quoting Ledford, 319 Or. at 405)). In other words, if the facts proved at trial establish the liability of the insured, the insurer's duty to indemnify will also be established as long as the insured's conduct is covered by the policy. Charter Oak Fire Ins. Co. v. Interstate Mechanical, Inc., 958 F. Supp. 2d 1188, 1215 (D. Or. 2013)(citing Ledford, 319 Or. at 403)). Thus, in order to determine the existence of a duty to indemnify, the court must examine the facts of the underlying lawsuit. Id.

Inland argues that a stay is appropriate because it has not tendered defense of the underlying lawsuit to Scottsdale as an excess insurer, and there is no obligation to indemnify yet because the underlying lawsuit is ongoing. Given that the underlying lawsuit is unresolved, it is unknown whether Boatman will obtain a judgment against Inland, and if so, whether such judgment would exhaust the Catlin Policy and therefore implicate Scottsdale's Excess Policy. Additionally, Inland argues that proceeding with the declaratory judgment action at this time would force Inland into

5    - OPINION AND ORDER

the vulnerable position of having to admit liability in the underlying lawsuit in order to defend itself in this action.[1]

In response, Scottsdale argues that this Court can decide its duty to indemnify because there is a substantial likelihood that a judgment in the underlying lawsuit will exceed the Catlin Policy limit and reach the Excess Policy issued by Scottsdale. Additionally, Scottsdale alleges that the Excess Policy clearly excludes the type of accident and harm that occurred in the underlying lawsuit. Further, Scottsdale argues if its rights are not clarified in this action, it could be forced to fund a settlement of what it believes is an uncovered claim, or risk having to defend against future claims for failure to fund a settlement.

Two primary doctrines inform the court's analysis on whether to resolve Scottsdale's duty to indemnify prior to the resolution of the underlying action.

First, "Oregon courts recognize that when the underlying tort action is still underway, it is appropriate to stay a simultaneous coverage action determining the duty to indemnify if the coverage action places the insured in 'the conflictive position' of being required to abandon its denial of liability in the underlying

---

[1]Inland also argues that this Court lacks subject matter jurisdiction; however, the stay of this action will remedy any jurisdictional defects regarding ripeness.

liability case in order to demonstrate coverage." Charter Oak Fire Ins. Co., 958 F. Supp. 2d at 1215 (citing N. Pac. Ins. Co. v. Wilson's Distributing Serv., Inc., 138 Or. App. 166, 175, 908 P.2d 827 (1995)). Therefore, Oregon district courts typically wait until the underlying litigation is resolved and liability is determined before ruling on an insurer's duty to indemnify. Id. ("Courts typically determine the duty to indemnify only after the underlying liability action has been completed."); see also Country Mut. Ins. Co. v. Larson, No. 08-6154-TC, 2010 WL 1039790, at *5 (D. Or. Feb. 26, 2010); Evraz Or. Steel Mills, Inc. v. Cont'l Ins. Co., No. CV 08-447-JE, 2009 WL 789658, at *11-12 (D. Or. Mar. 20, 2009); Travelers Prop. Cas. Co. of Am. v. Martella, No. CV-04-176-ST, 2004 WL 1375283, at *6 (D. Or. June 18, 2004).

Second, as both parties address in their briefing, federal courts have discretion whether to exercise declaratory relief jurisdiction. Charter Oak Fire Ins. Co., 958 F. Supp. 2d at 1216. Generally, a federal court may decline jurisdiction if exercising jurisdiction for the purpose of declaratory relief would require needless determination of state law issues, encourage forum shopping, or create duplicative litigation. Id. (citing factors in Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491 (1942)).

Here, the underlying lawsuit is unresolved. Discovery is not scheduled to close until October 27, 2014 and a trial date is currently set for January 5, 2015. Farnell Decl. Ex. 2. Despite

Scottsdale's argument that the auto exclusion in their Excess Policy automatically precludes any coverage obligation in the underlying lawsuit, this Court is hesitant to make such a determination when the facts of the underlying lawsuit have yet to be established.

Additionally, this declaratory action puts Inland in a conflictive position while the underlying lawsuit remains pending. North Pac. Ins. Co. v. Wilson's Distrib. Serv., 138 Or. App. 166, 175, 908 P.2d 827 (1995)("What plaintiff has attempted to do here is to litigate, at least in part, the Wilsons' liability to C-CE in the underlying tort action, putting the Wilsons in the conflictive position of being required to abandon their denial of liability in that action in order to come within the exception to the policy exclusion . . . . An insurer may not put its insured in that position."). For example, to defend itself in this action, Inland may have to posit that the facts could show that Inland was negligent in providing treatment to Lacy after the accident or in some other manner that falls outside Scottsdale's auto exclusion. Such a position would conflict with a denial of liability in the underlying lawsuit.

Further, to determine Scottsdale's duty to indemnify, this Court would have to review the facts in the underlying lawsuit, which essentially creates duplicative litigation and likely would cause this Court to engage in needless determination of state law

8    - OPINION AND ORDER

issues. Thus, consistent with the decisions of this District, I stay this action until the underlying lawsuit is resolved.

## III. CONCLUSION

In sum, until the issue of liability is resolved in the underlying lawsuit, this Court will not entertain the declaratory judgment determination that Scottsdale seeks. Doing so would place Inland in a conflictive position that could undermine its position in the underlying lawsuit and would require fact-finding identical to that which will occur in the underlying lawsuit in Washington State court.

Accordingly, Inland's motion to stay until the underlying lawsuit is resolved (doc. 27) is GRANTED. Inland's request for attorney fees is denied. Scottsdale's motion for summary judgment (doc. 18) is DENIED as moot with leave to renew once the stay is lifted.

IT IS SO ORDERED.
DATED this _9th_ day of ~~April~~ May, 2014.

Ann Aiken
United States District Judge

9   - OPINION AND ORDER